# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GLC LIMITED,                                     Case No. 1:15-cv-23

      Plaintiff,                             Judge Timothy S. Black

vs.

HUNTER MILLER FAMILY, LLC, *et al*.,

      Defendants.

## ORDER REGARDING GOOD FAITH

This civil action is before the Court on the parties' briefs (Docs. 9, 10, 11, 12)

regarding the proper test for determining whether Defendants received certain fraudulent

transfers in "good faith" pursuant to 11 U.S.C. §§ 548(c) and 550(b).

## I.  BACKGROUND FACTS

This case is a consolidation of two adversary proceedings that arose from a Ponzi

scheme perpetrated by the former principals of GLC Limited ("GLC").  GLC was a retail

liquidation company that purported to sell wholesale consumer products.  In reality, GLC

had very little legitimate business operations and was primarily operated as a Ponzi

scheme.  One of GLC's first investors, James Donnan, took the lead role in soliciting

investors.  Donnan is a well-known football coach who formerly was the head coach at

Marshall University and the University of Georgia.[1]  When soliciting investors, Donnan

told them that their funds would be used to buy and sell close-out merchandise and

excess production from prominent companies, such as Sears, Target, and Rite-Aid.  To

---

[1] Donnan was charged with running an $80 million Ponzi scheme in August 2012.  He was tried
and found not guilty on all counts in May 2014.

generate confidence, Donnan frequently told investors that the merchandise was presold, meaning that GLC sold it to another customer before buying it. Donnan typically received a 15 to 20 percent commission on any investments he successfully solicited.

Eventually, GLC was unable to secure the volume of investments necessary to keep the Ponzi scheme afloat. In late 2010, GLC was unable to repay the principal and interest it owed to its investors, as well as the commissions it owed Donnan, and GLC began to default on these commitments. Ultimately, in early 2011, GLC filed a Chapter 11 Bankruptcy Petition in the Southern District of Ohio.

Defendants Barry Switzer and Hunter Miller first learned of GLC in late 2009. Both Switzer and Miller chose to invest in GLC through their limited liability companies, Barry Switzer Family LLC ("BSF") and Hunter Miller Family LLC ("HMF"). Both BSF and HMF each paid $250,000 to GLC around April 1, 2010 and entered into a Promissory Note and a Profit Sharing Agreement. Each Note was in the principal amount of $250,000 with a fixed rate of 6% interest. The full balance of the Notes was due on or before April 1, 2011 or one year from the execution date – but GLC was permitted to prepay the Notes without penalty.

Under each Profit Sharing Agreement, GLC agreed to pay $200,000 annually. These Agreements required this amount to be paid in quarterly payments of $50,000, the first four of which were due on July 1, 2010; October 1, 2010; January 1, 2011; and April 1, 2011. The Profit Sharing Agreements stated that these payments were to continue "for as long [as] BSF [and HMF] maintains its investment in GLC." Significantly, GLC did

2

not receive any additional consideration for entering into the Profit Sharing Agreements other than the $250,000 that went towards the Note's principal amount.

In July and October 2010, GLC made $50,000 payments to BSF and HMF.[2] In the adversary proceedings, the Bankruptcy Court determined that GLC was operating a Ponzi scheme when the July and October Payments were made to BSF and HMF. Accordingly, those payments were potentially avoidable transfers under 11 U.S.C. § 548(a)(1)(A).[3] Pursuant to 11 U.S.C. § 550(a), the bankruptcy trustee may recover an avoided transfer, for the benefit of the bankruptcy estate, either from the initial transferee, or any of its immediate or mediate transferees. In this case, the Plan Administrator seeks to recover the July and October 2010 payments made to BSF and HMF, as well as any subsequent transfers made by BSF and HMF to Switzer and Miller.

However, BSF and HMF have a statutory defense under 11 U.S.C. § 548(c), which states:

> [A] transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

---

[2] Plaintiff asserts that the July and October payments were made pursuant to the Profit Sharing Agreements (Doc. 10 at 5), whereas Defendants allege that the payments were against the principal due under the Promissory Notes (Doc. 9 at 3).

[3] Section 548(a)(1)(A) states:
The trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-- (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

Defendants also have defenses available under 11 U.S.C. § 550(b)(1) and (2), which state that the trustee may not recover under 11 U.S.C. § 550(a)(2) from "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided … or any immediate or mediate good faith transferee of such transferee."

## II.  PROCEDURAL POSTURE

 The issue to be tried in the instant case is whether Defendants can establish their defenses to the avoidance powers of the Plan Administrator per 11 U.S.C. § 548(a)(1)(A) by satisfying the elements of 11 U.S.C. §§ 548(c) and 550(b).  To establish a statutory defense under either section, Defendants are required to show that the transfers were taken "for value" and "in good faith."  At this stage of the litigation, however, the Court is only focused on the specific issue of which standard to apply in determining whether a transfer was taken "in good faith" under 11 U.S.C. §§ 548(c) and 550(b).

## III.  ANALYSIS

The term "good faith" is not defined by the Bankruptcy Code, and the determination of "good faith" is generally assessed on a case-by-case basis.  *Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778, 810 (Bankr. S.D. Ohio 2009).  Two different tests appear to have emerged to determine if a transferee received a transfer in "good faith":  (1) the objective test; and (2) the hybrid objective-subjective test.[4]  *See*

---

[4] The varying approaches in defining "good faith" in this context "reflect a tension between a policy of protecting creditors from fraudulent transfers and a policy of promoting the ease and security of commercial transactions, with the outcome influenced substantially by the equities of the particular fact situations before the courts."  *In re Telesphere Commc'n*, 179 B.R. 544, 557

*Tabor v. Kelly (In re Davis)*, No. 05-15794-GWE, 2011 WL 5429095, at *25 (Bankr. W.D. Tenn. Oct. 5, 2011).

Neither the Sixth Circuit, nor the United States Supreme Court, has decided which test should apply to determine "good faith" under 11 U.S.C. §§ 548(c) and 550(b). However, the appellate courts which have addressed the issue have adopted what is often referred to as the objective test.[5] Conversely, the bankruptcy and district courts within the Sixth Circuit appear to be evenly split between the two tests, if not slightly favoring what is termed the hybrid objective-subjective test. *See Meoli v. Huntington Nat'l Bank (In re Teleservices Grp.)*, 444 B.R. 767, 773 (Bankr. W.D. Mich. 2011) (adopting the hybrid objective-subjective test but acknowledging that "[r]ecent case law strongly favors an objective approach to assessing a transferee's good faith"); *Bash v. Textron Fin. Corp.*, 524 B.R. 745, 759-60 (Bankr. N.D. Ohio Jan. 15, 2015) (adopting the hybrid objective-subjective test).

### A.  Standards for Determining "Good Faith" of the Transferee

Plaintiff argues that this Court should apply the objective test to determine "good faith" under 11 U.S.C. §§ 548 and 550.  (Docs. 10 and 12).  Conversely, Defendants seek the application of the hybrid objective-subjective test.  (Docs. 9 and 11).

---

(Bankr. N.D. Ill. 1994).  "Fraudulent conveyance law protects creditors from last-minute diminutions of the pool of assets in which they have interests.  They accordingly need not monitor debtors so closely, and the savings in monitoring costs make businesses more productive."  *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 892 (7th Cir. 1988).

[5] *See, e.g.,Gold v. First Tennessee Bank Nat'l Ass'n (In re Taneja)*, 743 F.3d 423, 430 (4th Cir. 2014); *Meeks v. Red River Entm't (In re Armstrong)*, 285 F.3d 1092, 1096 (8th Cir. 2002); *Hayes v. Palm Seedlings Partners-A (In re Agric. Research and Tech. Grp.)*, 916 F.2d 528, 535-36 (9th Cir. 1990); *Jobin v. McKay (In re M&L Bus. Mach. Co.)*, 84 F.3d 1330, 1338 (10th Cir. 1996).

### 1. The Objective Test

Under the objective test, "[t]he court looks to whether the transferee <u>objectively</u> <u>'knew or should have known'</u> [of the transferor's insolvency or the fraudulent purpose of the transfer] instead of examining the transferee's <u>actual knowledge</u> from a subjective standpoint." *In re Grove-Merritt*, 406 B.R. at 810 (citations omitted) (emphasis added). In other words, the trier of fact is called upon to determine "whether 'the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose and a <u>diligent</u> inquiry would have discovered the fraudulent purpose.'" *In re M&L Bus. Mach. Co.*, 84 F.3d at 1338 (quoting *Hayes v. Palm Seedlings Partners-A (In re Agric. Research and Tech. Grp., Inc.)*, 916 F.2d 528, 536 (9th Cir. 1990)) (emphasis in original). "[A] transferee may not put on 'blinders' prior to entering into transactions with the debtor and claim the benefit of § 548(c), where circumstances would place the transferee on inquiry notice of the debtor's fraudulent purpose or insolvency." *Cannon v. J.C. Bradford & Co. (In re Cannon)*, 230 B.R. 546, 592 (Bankr. W.D. Tenn. 1999), *rev'd on other grounds*, 2000 WL 34400479 (W.D. Tenn. Mar. 31, 2000).

### 2. Hybrid Objective-Subjective Test

The hybrid test "looks at the subjective intent of the transferee in light of objective factors." *In re Davis*, 2011 WL 5429095 at *24. The bankruptcy court in *Davis* established a three-step test for applying the hybrid objective-subjective standard.

First, "the court must determine what the transferee actually knew that would suggest insolvency or a fraudulent purpose with respect to the transferor. This is the sort of information that triggers inquiry notice." *In re Davis*, 2011 WL 5429095 at *25

6

(citing *In re Bayou Group, LLC*, 439 B.R. 294, 314-15 (S.D.N.Y. 2010)). The relevant inquiry is whether "the transferee [was] subjectively aware of 'badges of fraud' or 'red flags' that raised a duty of inquiry." *In re Davis*, 2011 WL 5429095 at *25. The transferee bears the burden of demonstrating that he was not aware of any 'badges of fraud' or 'red flags' when he received the transfer. *Id.* If the transferee meets his burden, he has established good faith and the test stops here. *Id.* However, if the transferee is unable to meet his burden (*i.e.*, he was aware of 'badges of fraud' or 'red flags' at the time he received the transfer), then the duty of inquiry is triggered and the trier of fact moves to the second step of the test. *Id.*

In the second step, "the court must determine whether the transferee undertook a diligent inquiry and the results of that inquiry." *In re Davis*, 2011 WL 5429095 at *25. If the result of the transferee's diligent inquiry revealed that the transferor was insolvent or was engaged in fraudulent activities (*e.g.*, a Ponzi scheme), but, regardless of this knowledge, the transferee accepted the transfer, then the transferee cannot be found to have received the transfer in good faith. *Id.*

Third, "if diligent inquiry did not discover the fraud, the court must determine whether any reasonable investigation would have disclosed the transferor's insolvency or fraudulent intent." *In re Davis*, 2011 WL 5429095 at *25. If so, then the transfer was not taken in good faith. *Id.*

### B. Adoption of the Hybrid Objective-Subjective Test

While several of the circuit courts have adopted the objective test, the Sixth Circuit has yet to rule on the issue, and, indeed, the trial courts within the Sixth Circuit

appear to favor the hybrid objective-subjective test.  Upon careful review, this Court agrees that the hybrid objective-subjective test is appropriate.

As an initial matter, the Court notes that the distinction between the objective test (as adopted by the circuit courts) and the hybrid objective-subjective test (as applied by several courts within the Sixth Circuit) is not as disparate as the parties argue or the case law implies.  *See Degirolamo v. McIntosh Oil Co. (In re Laurel Valley Oil Co.)*, 2014 WL 739126, at *4 (Bankr. N.D. Ohio Feb. 26, 2014).  First, under either approach, a transferee with actual knowledge of fraud or insolvency will fail to establish "good faith." However, the courts propounding the hybrid objective-subjective test do not equate "actual knowledge" of fraud or insolvency with "certainty" of fraud or insolvency. Indeed, the first step of the hybrid objective-subjective test "looks at the subjective intent of the transferee in light of objective factors, such as his **knowledge of the presence of 'badges of fraud' or 'red flags' that should have put him on inquiry notice**."  *In re Davis*, 2011 WL 5429095 at *24 (emphasis added).  Accordingly, the hybrid objective-subjective test merely requires actual knowledge of information that *should have alerted* the transferee that something was amiss (*i.e.*, actual knowledge of 'badges of fraud' or 'red flags') and that further inquiry was warranted.  Again, this is not wildly disparate from the objective test, as applied by the appellate courts.  *See, e.g., Goldman v. Capital City Mortg. Corp. (In re Nieves)*, 648 F.3d 232, 238 (4th Cir. 2011) ("what the transferee should have known depends on what it actually knew, and not what it was charged with knowing on a theory of constructive notice.  In other words, a transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the

8

debtor's possible insolvency") (internal quotation marks and citations omitted); *Bonded Fin. Servs.*, 838 F.2d at 898 ("[s]ome facts strongly suggest the presence of others; a recipient that closes its eyes to the remaining facts may not deny knowledge. But this is not the same as a duty to investigate, to be a monitor for creditors' benefit **when nothing known so far suggests that there is a fraudulent conveyance** in the chain … Nothing in the record of this case suggests that the [transferee] **knew** of [transferor's] financial peril or [fraudulent] plan") (internal citations omitted) (emphasis added).

Moreover, both standards call for a level of "diligent investigation" from the transferee, which will ensure the protection of other creditors, as well as the assets of the bankruptcy estate.  Where the two approaches differ, however, is *when* and *what* triggers the duty of inquiry.  In other words, is having 'reason to know' of possible fraud or insolvency sufficient to trigger the duty of inquiry, or should the transferee have actual knowledge before he should commence an investigation?

Under the objective approach, the duty of inquiry is triggered if the transferee knows, or *reasonably should know*, of the transferor's fraudulent intent or insolvency.  In effect, this approach will burden transferees to begin investigating during the early stages of a transaction, in order to ensure that there is nothing they *should know*.  Conversely, under the hybrid objective-subjective test, "the failure of the transferee to undertake a reasonable investigation or any investigation before making an investment is not at issue." *In re Davis*, 2011 WL 5429095 at *25.  Instead, "[i]t is only when the transferee becomes aware of facts that call into question the transferor's solvency and/or intent that the duty of inquiry arises." *Id*.  Of course, "it is the rare transferee who will admit his

knowledge of the fraud." *Id.* at *24. Accordingly, "something short of admitted knowledge will suffice. Willful blindness is the term often used to describe this alternate state of awareness." *In re Teleservices Grp.*, 444 B.R. at 814.

Thus, both tests ensure that a transferee who consciously avoids undertaking a reasonable inquiry, when appropriate, will not be allowed to profit from his 'willful blindness' by asserting "good faith" in his defense. However, the hybrid objective-subjective test provides a level of security for those transferees who are <u>genuinely</u> unaware of the circumstances implicating possible fraud or insolvency (even if a savvier businessperson would have detected the issue).

Finally, this Court notes the language of 11 U.S.C. § 550(b)(1), which states, in pertinent part, that a trustee may not recover from "a transferee that takes … in good faith, **and without knowledge of the voidability of the transfer**." (Emphasis added). To avoid redundancy, the Court reads "good faith" and "knowledge of voidability" as two distinct elements of the statute. *See Internal Revenue Serv. v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049, 1056 (6th Cir. 1990) (holding that 11 U.S.C. § 550(b) has three distinct elements "value, good faith, and lack of knowledge").[6] As such, "good faith" must hold some meaning beyond mere "knowledge of voidability"

---

[6] The Sixth Circuit has further distinguished the two elements of "good faith" and "knowledge of voidability," holding that a 'red flag' in the transaction "g[ave] notice that something might be wrong," and, therefore, the transferee's 11 U.S.C. § 550(b) defense failed because they did not "act[] without **knowledge of voidability**." *In re Nordic Village, Inc.* 915 F.2d at 1056 (emphasis added). The Sixth Circuit also stated that "[i]t [was] not apparent from the facts that the [transferee] had **actual notice-that it did not accept the check in good faith**-however, the facts give rise to an inference of inquiry notice." *Id.* (Emphasis added). Accordingly, while not specifically on point, the Sixth Circuit has given some indication that it equates "actual notice" with "good faith." *Id.*

(*i.e.*, knowing, or having reason to know of the transfer's voidability).  Accordingly, its inclusion is likely intended to reflect the traditional concept of "good faith," (*i.e.*, a moral judgment), which more closely correlates to an individual's subjective intent.  *See In re Teleservices Grp.*, 444 B.R. at 773 ("[t]his court … has determined that testing either Section 548(c) or Section 550(b)(1) good faith is in fact subjective, with the focus being upon traditional notions of honesty and integrity").

## IV.   CONCLUSION

Based upon the foregoing, the Court **ADOPTS** the three-step hybrid objective-subjective test in determining "good faith" under 11 U.S.C. §§ 548(c) and 550(b), and, at trial, will instruct the jury accordingly.

**IT IS SO ORDERED.**

Date:  7/10/2015              *s/ Timothy S. Black*
                             Timothy S. Black
                             United States District Judge